[No. 6783. Decided November 13, 1907.]

## L. P. RANOUS et al., Respondents, v. SEATTLE ELECTRIC COMPANY, Appellant.[1]

CARRIERS — INJURIES — PASSENGERS ALIGHTING — ACCELERATION OF SPEED. A street railway company is liable for personal injuries sustained by a passenger, about to alight from a car, where it appears that she gave notice to stop at a certain street, that the conductor gave the motorman the signal to stop there, that as the car approached the street at a slow rate of speed she went to the back platform preparatory to alighting, and as the car reached the center of the street, its speed was suddenly accelerated, throwing the plaintiff into the street, it appearing that the sudden acceleration was not for the purpose of reaching the far crossing, as the car did not stop.

SAME—DANGERS IN ALIGHTING—KNOWLEDGE OF OPERATORS. The operators of a street car are bound to know that where a bell is sounded to stop at a certain street, passengers act thereon and may be in a place of danger preparatory to alighting.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse instructions given in the general charge.

APPEAL—REVIEW—INVITED ERROR. Appellant cannot complain of error in sustaining an objection, where it forced respondent to make the objection and gained all it sought in the court below, since it thereby invited the ruling.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 17, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an

[1]Reported in 92 Pac. 382.

action for personal injuries sustained by a passenger alighting from a street car.   Affirmed.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.

*Jackson Silbaugh* and *Bard, Fenton & Gaffney*, for respondents.

RUDKIN, J.—This was an action to recover damages for personal injuries.   The testimony on the part of the plaintiff tended to show the following facts:   The defendant owns and operates a street railway system in the city of Seattle.   On the 30th day of April, 1906, the plaintiff boarded a Madison street car at Broadway, for the purpose of being transported to Sixth avenue.   At the time of paying her fare, or surrendering her transfer, she made known to the conductor in charge of the car her desire to alight from the car at Sixth avenue, and between Seventh and Eighth avenues she made a like request.   As the car passed Seventh avenue the conductor sounded the bell, which is the customary signal for the car to stop at the next street, in this case, Sixth avenue.   As the car approached Sixth avenue at a slow rate of speed, the plaintiff arose from her seat and proceeded to the back platform of the car, with the intention of alighting from the car when the same should come to a stop.   As the car reached about the center of Sixth avenue its speed was suddenly accelerated, and the lurch caused by such acceleration threw the plaintiff from her position on the back platform of the car into the street, causing injury to her person, for which a recovery is sought in this action.   From a judgment in favor of the plaintiff, the defendant has appealed.

The principal question raised by the appeal is that the evidence was insufficient to justify the verdict.   The argument in support of this contention is based largely upon the following statement contained in the appellant's brief:   "The court will take notice of the fact that the usual stopping place of a street car is upon the far side of the street.   The car, when

its speed was accelerated, had not yet reached this point."
While we know as a matter of fact that street cars usually
stop at the far side of intersecting streets, we also know that
there are exceptions to the rule. One exception is where the
car is ascending or descending a steep grade. In such cases
the cars stop on the level at the intersecting streets, which
makes the stopping place for passengers the near instead of
the far side of the street; and inasmuch as the testimony in
this case shows that there is a steep decline on Madison street
just after the car passes over the crossing on the lower side of
Sixth avenue, it would seem that this case presents an exception
to the general rule. But we do not at this time presume to
take judicial notice of the usual stopping place of street cars,
nor do we deem it material whether the stopping place of this
particular car was at the far or near side of Sixth avenue; for
it appears conclusively that the car did not in fact stop at
Sixth avenue, and that the acceleration of the speed of the
car on entering Sixth avenue was not for the purpose of reach-
ing the stopping place on the opposite side of the street. The
argument of the appellant is therefore based largely on a mis-
apprehension of the facts disclosed by the record. Counsel
cite the case of *Etson v. Fort Wayne etc. R. Co.*, 110 Mich.
494, 68 N. W. 298, in support of their contention; also
*Philips v. St. Charles Street R. Co.*, 106 La. 592, 51 South.
135. In the former case the court said:

"The car was not at a proper place to stop, but had nearly
stopped. To propel it to the usual stopping place beyond
the second walk (if such was the regulation), the application
of power or the removal of the brake was necessary—possibly
both. It is a natural law that inertia is not instantly over-
come, and that a start or accelerated motion tends to throw
down one riding upon a car. We cannot say that it was neg-
ligent for the plaintiff to step upon the platform at the time
he did, because it is a daily occurrence and the usual practice
for people to do so; but on the other hand, if it were not neg-
ligence for him to be there when the car was in motion, it is
difficult to see how it could be negligence on the part of the

company to run its cars to the usual stopping place although he was upon the platform. The car had a guard in the rear and a handle on the edge, and ordinarily a person is reasonably safe when upon the platform. At all events, it would be unjust to hold that by venturing upon the platform when the car was in motion the passenger can impose upon the company the obligation of instantly stopping or not accelerating the motion of the car."

Two of the judges specially concur upon the ground;

"That the starting of the car, which it is claimed caused the plaintiff to fall from the platform, was not improper and was not negligent under the circumstances. The car had not yet reached its stopping place at the time the plaintiff took his position on the platform, and the mere acceleration of the speed of the car by applying electricity when it was discovered to be necessary in order to reach the usual stopping place before the car should come to a full stop, was not, in my judgment, negligence."

In the latter:

"From the whole case as presented, we conclude that the plaintiff left his seat whilst the car was in motion, and took a position upon the lower step of the platform preparatory to alighting when the car should reach the crossing. It may be that the motorneer had slightly miscalculated and that it became necessary just then to accelerate the motion of the car in order that the rear platform might be exactly over the crossing when the car should stop and that the plaintiff, resting possibly on one foot, was taken by surprise by the forward movement and lost his balance; but slight irregularities of movement are common incidents in the starting and stopping of street cars, and those who prepare to alight, and do alight whilst the cars are in motion, assume the risk resulting from such irregularities."

These cases and others that might be cited established the following propositions:

(1) That a street car passenger, who leaves his seat when the car is approaching his destination and goes to the platform for the purpose of alighting when the car comes to a stop, is not, as a matter of law, guilty of contributory negli-

gence. *Consolidated Traction Co. v. Thalheimer*, 59 N. J. L. 474, 37 Atl. 132; *Weir v. Seattle Elec. Co.*, 41 Wash. 657, 84 Pac. 597.

(2) That a street railway company is not liable to such a passenger for injuries resulting from the ordinary jolting or jerking of the car, or the acceleration of its speed for the purpose of reaching its usual stopping place.

This case, however, presents a different question. Here the respondent was not injured by the ordinary jerking or jolting of the car in reaching its usual stopping place, nor by the acceleration of its speed for that purpose. As said by this court in *Weir v. Seattle Elec. Co., supra,*

"The negligence on the part of the respondent consisted in this: The servants in charge of the car led the appellant into a place of more or less danger and threw him off his guard. In other words, the appellant had a right to presume that the car would come to a stop at the north side of Virginia street, and to act upon that presumption. The jury might infer from this testimony that the failure to stop the car in obedience to the signal was the direct and proximate cause of the appellant's injury. It cannot be said, as a matter of law, that the appellant was guilty of contributory negligence. Indeed, the respondent does not so contend. It cannot be said that the appellant assumed the extra hazard arising from the failure of the respondent to stop the car, as it was in duty bound to do, nor in our opinion can it be said, as a matter of law, that the respondent was entirely free from negligence which contributed approximately to the injury. As above stated, we have thus far assumed that the appellant's testimony is true. Of course, if the signal to stop the car was not given until after the car passed beyond Virginia street, or if the appellant voluntarily stepped or jumped from the car, or was otherwise guilty of contributory negligence, he cannot recover."

The rule there announced is not in conflict with cases cited by the appellant, and is supported by authority. *Scott v. Bergen County Traction Co.*, 63 N. J. L. 407, 43 Atl. 1060; *Consolidated Traction Co. v. Thalheimer, supra.*

It is further said that the conductor and motormen did not know that the respondent was on the platform or in a place of danger. But if the bell was sounded to stop the car at Sixth avenue, as the respondents contend, the operators in charge of the car were bound to know that passengers might, and constantly do, act upon the warning thus given.

The next error assigned is the refusal of the court to give certain instructions requested by the appellant. The instructions requested were free from objection, but an examination of the charge as given, shows that the court below gave the requested instruction in substance and fully safeguarded all the rights of the appellant.

The next error assigned is the ruling of the court in sustaining an objection to the testimony of the physician who attended the respondent for the first few days after her injury. An examination of the record convinces us that the appellant gained its point, and attained all it sought in the court below, when it forced the respondent to object to the competency of the witness. The ruling of the court in sustaining the objection was invited rather than opposed, and will not be reviewed here.

Finding no error in the record the judgment is affirmed.

MOUNT, FULLERTON, DUNBAR, and ROOT, JJ., concur.

HADLEY, C. J. and CROW, J., took no part.