## CHICAGO, R. I. & P. R. CO. v. LARMON.

No. 23752. Feb. 26, 1935.

Rehearing Denied June 4, 1935.

462

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, for plaintiff in error.

Reuel W. Little, Utterback & Stinson, and Priscilla W. Utterback, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the court below.

Plaintiff's petition alleges that while riding as a passenger for hire on one of defendant's passenger trains near Haileyville, Okla., on or about September 19, 1927, he received the injuries of which he complains due to defendant's negligence in the following particulars: That the track of the defendant at the point where plaintiff was injured was carelessly and negligently constructed and maintained in that the ties upon which the rail rested were uneven, rotten, broken, and weakened to such an extent that they would not and did not sustain the train upon which plaintiff was riding so that it would move evenly without unusual jars or jolts along the path of said road, and that the rails upon said ties were loosely, carelessly, and negligently fastened to said ties, and loosely fastened to each other, and the track at that point was in such bad state of repair that it was not safe for trains to be moved over it, and that as a result thereof when the train reached said point it gave a sudden, unusual, violent, and unexpected lurch caused by the giving away of the ties, rails, and other parts of the roadbed, of such violence as to overbalance plaintiff and throw him from the platform of the train violently to the ground upon the right of way of the defendant; that the train was being run at a high, excessive, and unusual rate of speed and greater than the condition of the roadbed would allow without sudden, violent, and unusual lurches; that defendant was also negligent in that it allowed and permitted the vestibule door between the coaches to be and remain open, or to be so fastened that a sudden, violent, and unexpected lurch would cause the same to be thrown open and defendant thrown out of said coach and upon the ground, and that defendant failed and neglected to take proper care of plaintiff after he had received the injuries complained of.

Plaintiff's petition was filed more than two years after his cause of action accrued, and to negative the statute of limitations he alleged that within two years after said injuries were sustained he filed suit against defendant setting forth the matters aforesaid in the district court of Johnston county, Okla., and within two years after said injury filed an amended petition. upon the filing of which the cause was on petition of the defendant removed to the District Court of the United States for the Eastern District of Oklahoma, where, after the evidence had been submitted by both plaintiff and defendant, the court granted plaintiff a nonsuit, and that the cause is not barred by the statute of limitations.

Defendant answered denying generally the allegations of plaintiff's petition, pleaded contributory negligence, and other defenses not here material.

Upon conclusion of all the evidence, defendant moved for a directed verdict, which was denied and exceptions saved.

It is contended by defendant that there is no competent evidence of negligence on its part. If this contention is sound, it follows that there was nothing to submit to the jury, and the court should have sustained defendant's motion for a directed verdict in its favor.

Whether there is any competent evidence of primary negligence sufficient to submit the case to the jury is a question of law for the court. M., K. & T. R. Co. v. Sowards, 165 Okla. 214, 25 P. (2d) 641; Gulf, C. & S. F. Ry. Co. v. Nail, 156 Okla. 294, 10 P. (2d) 668; City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462; Chicago, R. I. & P. Ry. Co. v. Perkins, 115 Okla. 233, 242 P.

535; Oklahoma Union Ry. Co. v. Houk, 109 Okla. 187, 235 P. 499; Phillips v. Classen, 93 Okla. 82, 219 P. 708. In order to determine this question, it is necessary to review the record.

Plaintiff testified that he purchased a ticket at Chattanooga, Tenn., to Mannsville, Okla.; that he changed trains at Memphis where he boarded one of defendant's passenger trains; that while traveling on this train he attempted to enter a toilet on the coach in which he was riding, but finding the door locked returned to his seat and sat down for a while; that he again attempted to enter the toilet and finding the door locked started to hunt another toilet in one of the other coaches and "started across them steps between the boxes" (meaning coaches) and the train gave "a main jerk and jerked me sideways and I went out on the left side of the train about midnight." Plaintiff further testified that he had been many miles on trains; that he had been to Atlanta a hundred times, but knew nothing about vestibules and that all he knew were passenger cars from freight cars.

Testimony of two witnesses was introduced by plaintiff tending to prove that some of the railroad ties in the vicinity where plaintiff's injuries occurred were rotten, and that some of the rail spikes were not driven in firmly. One of the witnesses so testifying stated that he had been up and down the track several times, but that he was "not railroad man enough to tell much about it." The other witness who testified to the condition of the track did not undertake to fix the time of his inspection of the track with reference to the date of plaintiff's injuries.

The foregoing is substantially all the evidence that was introduced to establish defendant's negligence. We are therefore called upon to determine whether this evidence is sufficient to make out a prima facie case and to take the case to the jury. In the determination of this question, we have considered the following Oklahoma cases cited by plaintiff and arising out of unusual and violent lurches or jerks of passenger carrying trains. St. Louis & S. F. Ry. Co. v. Gosnell, 23 Okla. 588, 101 P. 1126; St. Louis & S. F. Ry. Co. v. Fitts, 40 Okla. 685, 140 P. 144, L. R. A. 1916C, 348; Ramsey v. McKay, 44 Okla. 774, 146 P. 210; M., K. & T. R. Co. v. Lynn, 62 Okla. 17, 161 P. 1058.

In the Gosnell Case, discussed at length by both parties, plaintiff was a passenger for hire on a freight train that stopped for water just before reaching an intermediate station when plaintiff, thinking the train had reached the station, stepped out on the rear platform to talk with a fellow passenger seated on the car steps. Upon finding that the train had not reached the station, plaintiff, when the train started again, stepped back in the caboose on the way to his seat when the train suddenly stopped with such a jar that plaintiff was knocked off his feet and injured. None of the other passengers were hurt, but two among the others who were standing were knocked down by the jar. The jar resulting from the stopping of the train was variously described by the witnesses as "very hard jar", "harder than ordinary", "very uncommon", "unusually hard", "more severe," and "little extraordinary." The court held that there was not sufficient evidence of negligence to take the case to the jury.

Plaintiff contends that the Gosnell Case is not applicable, because what would constitute negligence in the case of a passenger train might not constitute negligence in the case of a freight train. The same degree of care, however, is required (sec. 11955, O. S. 1931) of the railroad company in transporting passengers for hire on any mixed train of passenger and freight cars, or on any baggage, wood, gravel, or freight car, and the same care must be taken and the same responsibility and duties are assumed by the railroad as for passengers on passenger cars. By section 9260, O. S. 1931, a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. As stated in the Gosnell Case, the degree of care required is the same, the only difference being that the passenger on the freight train submits himself to the inconvenience and danger necessarily attending that mode of travel. What might be an unusually violent lurch or jerk in the case of a passenger train might well be a usual and ordinary lurch or jerk in the case of a freight train. The danger incident to traveling on a freight train may therefore be greater than on a passenger train, but the degree of care required of the railroad company is the same. When an action for damages is predicated on neg-

ligence in the operation of a freight train, as in the Gosnell Case, the degree of violence of the lurch or jerk must be determined with reference to what is usual and ordinary and necessarily incident to the operation of such train; and the same is true of a passenger train.

In determining the question of negligence, each case must of necessity be considered upon its own peculiar facts and circumstances, but the law as applied to the facts in a freight train case may be equally applicable to passenger trains.

In the other three cases cited, there was competent evidence of extraordinary and unusual lurches or jerks resulting in injuries to passengers. In St. Louis & S. F. Ry. Co. v. Fitts, 40 Okla. 685, 140 P. 144, L. R. A. 1916C, 348, a five year old child was thrown from her seat in a passenger coach by a sudden and heavy jerk of the train that was of sufficient severity to almost throw two adult passengers from their seats.

In Ramsey v. McKay, 44 Okla. 774, 146 P. 210, the freight train on which plaintiff was riding as a passenger was stopped so suddenly and with such severity that the conductor, brakeman, plaintiff, and another were thrown in a pile on the car floor in which they were riding, and the conductor, who ought to have known from experience what constituted an unusual jolt or jar, remarked that the engineer did it on purpose and that he would reprimand him therefor.

In M., K. & T. R. Co. v. Lynn, 62 Okla. 17, 161 P. 1058, the evidence clearly established that there was an extraordinary jar or jolt of the caboose of a freight train in which plaintiff was riding, which was caused by the sudden stopping of the engine, brought about by the inability of a brakeman to unlock a switch.

In the case under consideration there is no proof of any unusual lurch or jerk of the train, and while movements of the train undoubtedly played a part in plaintiff's accident, defendant's liability arose only if caused by movements which were unusual or extraordinary, and such proof cannot be supplied by the description in terms of violence of the movements of the train. Phinney v. Eastern Massachusetts St. Ry. Co. (Mass.) 189 N. E. 52. Plaintiff's testimony that there was a "main jerk" is on a par with testimony in Guffey v. The Hannibal, St. J. Ry. Co., 53 Mo. App. 462-6, where the court held that expressions of opinion by witnesses not qualified by experience or observation to give an opinion that the jerk or jar relied upon as negligence was "rather an unusual jar", "more violent than common on freight trains", and "heap harder than usual", are of no value and do not constitute so much as a scintilla of evidence. In St. Louis & S. F. Ry. Co. v. Gosnell, 23 Okla. 588, 101 P. 1126, testimony of passengers as to the character of the stop was rejected as mere expressions of opinion.

There were other passengers on the train, but none of them or any other person was called to testify to any unusual lurch or jerk except the plaintiff, nor was there any proof that any one else on the train noticed or was affected by any unusual lurch or jerk. According to plaintiff's testimony he was attempting to pass from one coach to another, and what happened to him may have been dependent upon the degree of care and caution with which he was proceeding, upon which there is no testimony. The vestibule door must of necessity have been open or plaintiff could not have fallen out of the train to the ground. There is no evidence of how or when the door was opened, but this cannot be relied upon as negligence since the first allegation of negligence in this respect was made after the statute of limitations had barred any action based thereon. The trial court so held and this is not disputed by plaintiff.

There is no presumption of negligence from the mere fact of injury. M., K. & T. R. Co. v. Sowards, 165 Okla. 214, 25 P. (2d) 641; Chicago, R. I. & P. Ry. Co. v. Smith, 160 Okla. 287, 16 P. (2d) 226; Atchison, T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. (2d) 908; Jenkins v. Davis, 111 Okla. 191, 239 P. 135; New v. Bradshaw, 89 Okla. 205, 214 P. 557; Chicago, R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 P. 1182; St. L. & S. F. R. Co. v. Fick, 47 Okla. 530, 149 P. 1126; Chicago, R. I. & P. R. Co. v. Watson, 36 Okla. 1, 127 P. 693; but plaintiff contends that the proof goes further than that and shows a defective condition of the track at the point of plaintiff's accident due to rotten ties, loose spikes, and a low place or sway in one of the rails. This was substantially the testimony of two witnesses, one of whom admitted that he was not railroad man enough to tell much about the condition of the track, and the other did not fix the time of his inspection of the track with reference to the date of the accident. We cannot accept

this character of testimony as establishing negligence on the part of defendant, especially where, as shown, there is no competent proof of any unusual or extraordinary lurch or jerk.

The evidence was insufficient to make out a prima facie case of negligence, and the court should therefore have directed a verdict for defendant.

In view of the conclusion reached, it is unnecessary to consider other questions discussed in the briefs.

The judgment of the trial court is reversed and the cause remanded for a new trial.

The Supreme Court acknowledges the aid of Attorneys Villard Martin, Chas. A. Holden, and Sam A. Neely in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Martin and approved by Mr. Holden and Mr. Neely, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.